Opinion filed December 30,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00022-CR

                                                    __________

 

                                ALEXANDER
JORDAN,  Appellant  

 

                                                             V.

 

                                     STATE
OF TEXAS,  Appellee



 

                                   On
Appeal from the 78th District Court

                                                           Wichita
County, Texas

                                                   Trial
Court Cause No. 47,296-B

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The jury convicted Alexander Jordan of aggravated assault.  Upon a finding of “true”
to a prior felony conviction alleged for enhancement purposes, the jury
assessed his punishment at confinement for a term of sixty years in the Institutional
Division of the Texas Department of Criminal Justice.  The jury also assessed a
fine of $10,000.  Appellant challenges his conviction and sentence in two
issues relating to the admission of extraneous offenses.  We affirm.

Background
Facts

The
victim testified that she was walking to her mother’s house before 7:00 a.m. on
April 21, 2007.  Appellant pulled over in his car and offered her a ride, which
she declined.  After continuing her walk, appellant approached her again in his
vehicle.  At this time, he jumped out of his car, put a gun to her head, and
threatened to shoot her if she screamed.  He then threw her into his car and
transported her to the end of a dead-end street.  Appellant then dragged her
out of the car onto the side of the dead-end street and raped her as she
attempted to fight him off her.  The victim testified that, during the course
of their struggle, appellant told her he was going to shoot her and that he subsequently
shot her in her right leg above the knee.  After appellant shot the victim, he
returned to his car, fired another shot toward the victim that grazed her eye,
and then sped away.

Appellant
admitted in his testimony given during the guilt/innocence phase that he had an
encounter with the victim.  However, he offered a much different version of the
encounter.   He testified that he hired the victim as a prostitute after she
“flagged him down” when he drove by a hotel that prostitutes frequent.  He
contends that the victim directed him to transport her to the dead-end-street location
and that she subsequently performed oral sex on him based upon their previous
negotiations.  Appellant testified that, at some point while he and the victim
were engaged in sexual activities inside his car, a man that appellant
previously saw with the victim at the hotel opened the door of the car.  Appellant
testified that he and this man starting fighting outside the car.  He further
testified that the man had a gun in his hand and that the gun went off during
the struggle, striking the victim in the leg.

Evidence of Extraneous Offense

Near
the end of his direct testimony, appellant gave the following response in reply
to his trial counsel’s question asking him if he felt he was fighting for his
life during the alleged altercation:  

       I was.  I was
fighting for my life.  My means is not to harm nobody.  I wasn’t trying to harm
no [victim’s name].  The thing was instead of her explaining to the cops what
happened, saying that, Well, I picked up this john, we tried to rob him, and
this happened to me, she had to make up some kind of story.  So she decided to
tell the people, 7:00 in the morning that I jumped out of my car and -- and -- and
dragged her, which is ludicrous.  Why would I do that?  

 

       My face is on
posters all over the city.  I’m selling CDs.[1] 
Why would I wreck everything I worked so hard for to rob or rape a dope fiend,
somebody that smoke crack and sell her body for drugs.  Why would I do that? 
And I’m not degrading her.  I’m not trying to talk down on her because I know
she was harmed, but what if it was me that was killed? What if it was me that
was hurt that day?  It would just be another man dead.  It would just be an
unsolved murder.

 

The prosecutor
relied on this response in subsequently asking the trial court for permission to
present evidence about appellant’s encounters with two other women, S.C. and
M.F.[2]
 Specifically, the prosecutor sought to introduce evidence that on October 12,
2006, appellant engaged the services of S.C., a prostitute, at a local hotel.  While
driving to a remote area in Wichita Falls, appellant and S.C. negotiated for S.C.
to perform oral sex on appellant in exchange for money.  However, appellant
allegedly began beating S.C. to the point that he anally raped her and then
threw her out of his car.  With regard to M.F., appellant allegedly met her at
an acquaintance’s house.  He offered her a ride to a store to pick up some
medicine, but instead of taking her to the store, he allegedly drove her to a
motel room after which he pulled a gun on her and forced her to engage in
sexual acts with him at gunpoint.   

            The
prosecutor asserted that evidence of these extraneous acts was admissible to
rebut appellant’s defensive theory and to show intent, motive, and lack of
mistake.  Appellant objected to the admission of this evidence under Tex. R. Evid. 404(b) and 403.  After
conducting a hearing outside the presence of the jury, the trial court overruled
appellant’s objections.  In doing so, the trial court stated that it was going
to permit the evidence of extraneous acts to show intent, motive, and lack of
mistake; to rebut the defensive theory; and to remove the false impression
created by appellant in his testimony.  Appellant challenges the trial court’s
rulings under Rules 404(b) and 403 in two issues.

Analysis

Rule 404(b) provides in relevant
part: 

 

            Evidence
of other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith. It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident.

 

Rule 404(b) prohibits the admission of evidence of extraneous
offenses committed by the defendant for the purpose of proving that, on the
occasion in question, the defendant acted in conformity with the character
demonstrated by the other bad acts.  Santellan v. State, 939 S.W.2d 155,
168 (Tex. Crim. App. 1997).  However, evidence of extraneous offenses is not
inadmissible if it is relevant to a fact of consequence apart from the tendency
to show conduct in conformity with character.  See Casey v. State, 215
S.W.3d 870, 879 (Tex. Crim. App. 2007).  The exceptions listed under Rule
404(b) are neither mutually exclusive nor collectively exhaustive.  De La
Paz v. State, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).  Rule 404(b) is a
rule of inclusion rather than exclusion.  Id.

Whether extraneous offense evidence has relevance apart from character conformity, as
required by Rule 404(b), is a question for the trial court.  Id.  So,
too, is a ruling on the balance between probative value and the counter factors
set out in Rule 403, although that balance is always slanted toward admission,
not exclusion, of otherwise relevant evidence.  Id.  A trial court’s
ruling on the admissibility of extraneous offenses is reviewed under an
abuse-of-discretion standard.  Id.  As long as the trial court’s ruling
is within the zone of reasonable disagreement, there is no abuse of discretion,
and the trial court’s ruling will be upheld.  Id. at 343-44.   A trial
court’s ruling is generally within this zone if the evidence shows that:  (1)
an extraneous transaction is relevant to a material, non-propensity issue and (2)
the probative value of that evidence is not substantially outweighed by the
danger of unfair prejudice, confusion of the issues, or misleading of the jury. 
Id. at 344.  Furthermore, if the trial court’s evidentiary ruling is
correct on any theory of law applicable to that ruling, it will not be
disturbed even if the trial judge gave the wrong reason for his right ruling.  Id.

One well-established rationale for admitting evidence of uncharged misconduct is to
rebut a defensive issue that negates one of the elements of the offense.  Id.
at 343; Martin v. State, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005).  A
party may introduce evidence of other crimes, wrongs, or acts if such evidence
logically serves to make more or less probable an elemental fact, an
evidentiary fact that inferentially leads to an elemental fact, or defensive
evidence that undermines an elemental fact.  De La Paz, 279 S.W.3d at
343; Martin, 173 S.W.3d at 466.  But a mere denial of commission of an
offense generally does not open the door to extraneous offenses because a
defendant generally denies commission of the offense at trial. De La
Paz, 279 S.W.3d at 343.

Appellant’s
contentions that the victim “had to make up some kind of story” and that he
would not have engaged in the alleged conduct based upon his nature and status
in the recording community are analogous to those made by the defendant in Bass
v. State, 270 S.W.3d 557 (Tex. Crim. App. 2008).  Bass was a pastor accused
of sexually assaulting a teenager on church property.  Id. at 557.  In
his opening statement, he claimed the teenager’s allegations were “pure
fantasy” and “pure fabrication.”  Id.  He further claimed during his
opening statement that these allegations were “contrary to [his] character” and
“not worthy of belief” because “[a]s a pastor and minister,” he was “the real
deal and the genuine article.” Id. at 557-58.  After the teenager
testified, the trial court permitted the State to present the extraneous offense
evidence during its case-in-chief, which showed that appellant had sexually
assaulted two other girls in his church office.  The Texas Court of Criminal
Appeals held that it was “at least subject to reasonable disagreement whether
the extraneous-offense evidence was admissible for the noncharacter-conformity
purpose of rebutting appellant’s defensive theory that the complainant
fabricated her allegations against him and of rebutting the defensive theory
clearly suggesting that appellant, as a ‘real deal’ and ‘genuine’ pastor, would
not engage in the type of conduct alleged in the indictment.”  Id. at
563; see De La Paz, 279 S.W.3d at 345.

The
recent holdings in Bass and De La Paz establish that extraneous
offense evidence can be admissible to rebut the defensive theory of
fabrication.  De La Paz, 279 S.W.3d at 350; Bass, 270 S.W.3d at
563.  Bass additionally stands for the proposition that extraneous
offense evidence can be admissible to rebut a false impression created by the
accused regarding his good nature or character. The evidence pertaining to
appellant’s conduct with S.C. and M.F. had logical relevance apart from
character conformity because it showed that the victim’s allegations were less
likely to be fabricated and it rebutted appellant’s statements that he would
not have engaged in the alleged conduct.  Accordingly, the trial court did not
abuse its discretion in overruling appellant’s objection to the extraneous
offense evidence under Rule 404(b).  Appellant’s first issue is overruled.

With
respect to appellant’s second issue, a Rule 403 balancing test includes the
following factors: (1) how compellingly the extraneous offense evidence serves
to make a fact of consequence more or less probable – a factor which is related
to the strength of the evidence presented by the proponent to show the
defendant in fact committed the extraneous offense; (2) the potential the
other offense evidence has to impress the jury in some irrational but
nevertheless indelible way;  (3) the time the proponent will need to develop
the evidence, during which the jury will be distracted from consideration of
the indicted offense; and (4) the force of the proponent’s need for this
evidence to prove a fact of consequence, i.e., does the proponent have other
probative evidence available to him to help establish this fact, and is this
fact related to an issue in dispute.  De La Paz, 279 S.W.3d at 348-49.   

There
is a presumption that evidence which is deemed to be relevant is admissible.  See
Casey, 215 S.W.3d at 879.  The extraneous offenses occurred relatively
close in time to the alleged offense, and they involve highly unusual events
that are unlikely to repeat themselves inadvertently or by happenstance.[3]
They also served a dual purpose of rebutting appellant’s allegation that the
victim was fabricating the allegations and his statements that he would not
have engaged in this conduct based upon his good character.  Furthermore, the
prosecutor did not seek to offer the extraneous offense evidence until after appellant
testified during the guilt/innocence phase.  When all of the factors of the
balancing test are viewed in toto, we find no abuse of discretion by the
trial court in determining that the probative value of the extraneous offense
evidence was not substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading of the jury.  Appellant’s second issue
is overruled. 

This
Court’s Ruling

             The
judgment of the trial court is affirmed.

 

            

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

 

December 30, 2010

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]Appellant testified that he produced and recorded rap
music CDs and promoted them in the Wichita Falls area.





                [2]Given the violent and degrading nature of the
allegations, we are referring to the other two women by their initials.  





                [3]See De La Paz, 279 S.W.3d at 347 for a
discussion of the “doctrine of chances.”